UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CURTIS KENNETH COLOMBE,                         Case No. 19-10687

             Plaintiff,                         Stephanie Dawkins Davis
    v.                                          United States District Judge

COMMISSIONER OF SOCIAL
SECURITY,

             Defendant.
_____/

**OPINION AND ORDER**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF No. 12, 15)**

## I.    PROCEDURAL HISTORY

### A.    Proceedings in this Court

On March 7, 2019, Plaintiff Curtis Kenneth Colombe filed the instant suit,

seeking review of the Commissioner's unfavorable decision denying him disability

benefits.  (ECF No. 1).  This matter is before the court on cross-motions for

summary judgment, which the parties filed on May 24, 2019 (Colombe) and

September 11, 2019 (Commissioner).  (ECF Nos. 12, 15).  Colombe filed a reply

on September 16, 2019.  (ECF No. 16).

### B.    Procedural History

On July 17, 2012, Colombe filed a Title II application for a period of

disability and disability insurance benefits, alleging disability beginning on

November 15, 2011. (Tr. 20).[1] The State Agency denied his claim at the initial

level on December 10, 2012. (Tr. 72). Colombe requested a hearing, and this

matter was heard before Administrative Law Judge Denise McDuffie Martin on

July 11, 2013. (Tr. 35-60). On February 20, 2014, ALJ Martin issued a decision

denying Colombe benefits. (Tr. 20-31). The Appeals Council denied Colombe's

request for review on April 17, 2015. (Tr. 1-6). Colombe filed a complaint

seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. §

405(g) on June 15, 2015. (Case No. 15-12165, ECF No. 1). On October 30, 2015,

the parties stipulated and the court ordered that the matter be remanded to the

Commissioner for further proceedings under sentence four of 42 U.S.C. § 405(g).

(Case No. 15-12165, ECF No. 13, PageID.410). Pursuant to this court's order, the

Commissioner was to further evaluate medical equivalency at step three consistent

with Social Security Ruling ("SSR") 96-6p, and, if necessary, to continue through

the sequential evaluation process under 20 C.F.R. § 404.1520(a)(4). (*Id.*) On

January 9, 2016, the Appeals Council remanded the matter to the Administrative

Law Judge. (Tr. 463-467). On remand, the Appeals Council instructed that, in

determining Colombe's maximum residual functional capacity ("RFC"), the

Administrative Law Judge must consider the treating source opinions pursuant to

---

[1] The Administrative Record appears on the docket at entry number 10. All references to this record are identified as "Tr."

20 C.F.R. § 404.1527.  (Tr. 466).  The matter was assigned to Administrative Law Judge B. Lloyd Blair ("the ALJ").

On March 17, 2016 and November 4, 2016, the ALJ held hearings in Colombe's case.  (Tr. 389-407; 408-433).  In a decision dated December 7, 2016, the ALJ found that Colombe was not disabled.  (Tr. 370-382).  Colombe requested a review of this decision, and, on May 22, 2018, the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied his request for review.  (Tr. 360-363); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).  On February 13, 2019, the Appeals Council extended the time within which Colombe could file a civil action until March 18, 2019.  (Tr. 356-357).  Colombe timely filed a complaint in this court.

For the reasons set forth below, the undersigned **DENIES** plaintiff's motion for summary judgment, **GRANTS** defendant's motion for summary judgment, and **AFFIRMS** the findings of the Commissioner.

## II.    FACTUAL BACKGROUND

Colombe was born on September 28, 1964 and was 47 years old at the time of his alleged disability onset date (November 15, 2011).  (Tr. 65, 137).  He has an 11th grade education and has past relevant work as a mechanic, as a cashier, and in lawn maintenance.  (Tr. 47-49).  At the first hearing, Colombe testified that his last job was as a cashier at Speedway from approximately 2008 until 2011, when he

3

was fired for "breaking too many things." (Tr. 47-48, 147). But, at the second hearing, Colombe changed his testimony, stating that he quit his job at Speedway because "they were running out of hours for me . . . ." (Tr. 400).

At the most recent hearing, Colombe testified that he and his wife had divorced and that he lives with his adult daughter and his grandchild. (Tr. 378, 398-399, 472).

The ALJ applied the five-step disability analysis to Colombe's claims and found at step one that he did not engage in any substantial gainful activity since the alleged onset date (November 15, 2011) through his date of last insured (March 31, 2012). (Tr. 373). At step two, the ALJ found that Colombe had the following severe impairments: degenerative disc disease of the cervical spine status post anterior fusion and amputation of portions of the third, fourth, and fifth digits of the left hand. (*Id.*) At step three, the ALJ found that Colombe did not have an impairment or combination of impairments that met or medically equaled one of the listings in the regulations. (*Id.* at 373-375). The ALJ determined that Colombe has the RFC to perform light work except that he can never use ladders, scaffolds or ropes; can occasionally handle, finger and use hand controls with the left upper extremity; can occasionally bend, twist, and turn at the neck; his left upper extremity can be used to assist in lifting and carrying; and he must avoid all exposure to hazards including dangerous and unprotected machinery and heights.

(*Id.* at 375-380).  At step four, the ALJ determined that Colombe's past relevant work consisted of work as a cashier (light, unskilled); lawn maintenance (medium, semi-skilled); and as a mechanic (medium, skilled).  (*Id.* at 380-381).  At step five, the ALJ concluded that there were a significant number of jobs in the national economy that Colombe could perform and, thus, he was not under a disability from the alleged onset date through the date of last insured.  (*Id.* at 381-382).

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination to determine if the agency exceeded statutory authority or was arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If a claimant does not obtain relief during the administrative review process, the claimant may file an action in federal district court.  *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review is limited

in that the court "must affirm the Commissioner's conclusions absent a

determination that the Commissioner has failed to apply the correct legal standard

or has made findings of fact unsupported by substantial evidence in the record."

*Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v.*

*Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether

substantial evidence supports the ALJ's decision, "we do not try the case de novo,

resolve conflicts in evidence, or decide questions of credibility." *Bass v.*

*McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383,

387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to

evaluate the credibility of witnesses, including that of the claimant." *Rogers v.*

*Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc.*

*Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a

claimant's subjective complaints and may . . . consider the credibility of a claimant

when making a determination of disability."); *Walters*, 127 F.3d at 531

("Discounting credibility to a certain degree is appropriate where an ALJ finds

contradictions among medical reports, claimant's testimony, and other evidence.").

"However, the ALJ is not free to make credibility determinations based solely

upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*,

486 F.3d at 247 (quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

The court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528,

535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("An ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty-stricken adults and children who become disabled.  F. Bloch, Federal Disability Law and Practice § 1.1 (1984).  While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a

'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  "Disability"

means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis set forth at 20 C.F.R.

§§ 404.1520, 416.920.  Essentially, the ALJ must determine whether: (1) the

plaintiff is engaged in significant gainful activity; (2) the plaintiff has any severe

impairment(s); (3) plaintiff's impairments alone or in combination meet or equal a

Listing; (4) the claimant is able to perform past relevant work; and (5) if unable to

perform past relevant work, whether there is work in the national economy that the

plaintiff can perform.  *Id*.  "If the Commissioner makes a dispositive finding at any

point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding rejecting the existence of disability, the burden transfers to the

Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g); 20 C.F.R. § 416.960(c).

If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

C.    Treating Physician's Rule

In determining Colombe's RFC, the ALJ analyzed, amongst other things, the

opinions of Dr. Ivan Gastman, Colombe's treating physician, and Dr. Henry

Maimon,[2] a retained expert.  On June 21, 2013,[3] Dr. Gastman gave a written statement assessing Colombe's physical capacities.  (Tr. 337-340).  Dr. Gastman opined that due to cervical disc radiculopathy, Colombe cannot meet the demands of sedentary work on a full-time basis.  (Tr. 337-338).  He concluded that Colombe can stand for one hour, walk for less than one hour, and sit for two hours total in an eight-hour workday (Tr. 337); can frequently lift up to five pounds and occasionally lift six to ten pounds (Tr. 338); can use his hands frequently for grasping and fine manipulation (Tr. 338); would require one ten-minute rest period in addition to a regular lunch break but would not need to lie down during the day (Tr. 339); and that his limitations had existed for 10 years, or since 2003 (Tr. 340).  The ALJ gave "very little weight"[4] to Dr. Gastman's opinions in Colombe's Physical Capacities Evaluation.  (Tr. 379, 337-339).

---

[2] In his decision, the ALJ states that he gave great weight to the opinion of medical expert Henry Malmon, M.D., who testified at the hearing.  (*See, e.g.*, Tr. 374).  But, there is no evidence in the record of an expert by that name.  An individual named Henry Maimon, M.D. was asked to serve as an expert witness prior to the hearing, and his resume is included in the record.  (*See* 628, 670).  At the second hearing before the ALJ, in which the medical expert appeared and testified, the expert's name is transcribed as Henry Layman.  (*See, e.g.*, Tr. 412).  However, this appears to have been a phonetic spelling of his name, as he did not spell it for the record.  (*Id.*)  Thus, the spelling appears to be a scrivener's error and the court accepts Dr. Layman/ Maimon/ Malmon as the same individual with the correct spelling of his last name as Maimon per his resume.

[3] As the Commissioner points out, the year of the opinion is difficult to read (Tr. 340), but Colombe testified at the first hearing that it was rendered on June 21, 2013 (Tr. 54).

[4] Sometimes, the ALJ said that he gave "very little weight" to Dr. Gastman's opinion; other times, he said that he assigned it "little weight."  (*Compare* Tr. 379 *with* Tr. 380).

In contrast, Dr. Maimon, a non-examining consultative expert, testified that there is insufficient evidence to render a good opinion as to Colombe's RFC. (Tr. 418). Indeed, Dr. Maimon observed, "[t]he man's had two operative procedures. There's no comment about his postop recovery. There's no comment about any complications and there's nothing in his record that leads me to believe that this man couldn't function normally. All it is is this comment by Gasman [sic], no clinical records, no office visits, nothing." (Tr. 419). Regarding Dr. Gastman's opinion, Dr. Maimon opined that "I find actually nothing in this record to substantiate that evaluation. Absolutely nothing." (Tr. 419). Dr. Maimon concluded that "I really feel somewhat at a loss in this case to give you a really good opinion because there's no evidence in this record as I see it that says this gentleman is disabled except he's had two operations." (Tr. 419).

### 1. Overview of the Parties' Arguments

Colombe argues that the ALJ erred in failing to give controlling weight to Dr. Gastman's opinion about Colombe's limitations. (ECF No. 12, PageID.726). He also argues that the ALJ failed to give good reasons for the weight that he did give to the opinion. (*Id.* at PageID.727). Colombe contends that his failure to obtain post-operative treatment records "must be excused" because there was "justifiable cause" due to his financial hardship and inability to access free/low-cost community resources and that he "has been further jeopardized" by his

surgeon, Dr. Steven Boodin, who refused to provide his medical records due to an outstanding bill. (*Id.* at PageID.729) (citing SSR 82-59). Therefore, Colombe requests in the alternative that this court issue a subpoena to Dr. Boodin requiring him to provide Colombe's medical records. (*Id.* at PageID.730).

In response, the Commissioner argues that the ALJ correctly noted that Dr. Gastman did not treat Colombe during the period under review and that the opinion itself was rendered more than a year after Colombe's date last insured. (ECF No. 15, PageID.743). Further, Dr. Gastman's Physical Capacities Evaluation was internally inconsistent and not supported by the record. (*Id.* at PageID.743-744). The Commissioner also asserts that Dr. Maimon's testimony that there was insufficient evidence to make a good medical judgment as to Colombe's limitations supports the ALJ's discounting of Dr. Gastman's opinion. (*Id.* at PageID.753). The Commissioner argues that this court should not issue a subpoena to Dr. Boodin because the surgery Boodin performed well pre-dated Colombe's alleged onset date; the surgical notes in the record include a summary of Colombe's treatment; and the ALJ credited and accounted for Colombe's cervical impairment in the RFC he fashioned. (*Id.* at PageID.751) (citing Tr. 345-347, 373).

2.    Legal Standard

The opinion of a treating physician should be given controlling weight if it is: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2).  In evaluating whether the ALJ sufficiently explained whether Dr. Gastman's opinion is unsupported by medically acceptable clinical and laboratory diagnostic techniques and whether the opinion is inconsistent with other substantial evidence in the record, the court must review those records in some detail.  Such a review is necessary in order to ensure that the ALJ properly applied the treating physician rule, to assess whether his analysis permits meaningful review of the application of that rule, and to make certain the application of the rule does not focus on isolated pieces of record evidence to support the analysis.  *See Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376, 378 (6th Cir. 2013).

Once an ALJ has determined that a treating source opinion is not entitled to controlling weight, the ALJ must give good reasons for the weight accorded the opinion.  *Gayheart*, 710 F.3d at 376.  The reasons provided must be supported by the evidence in the case record and must be sufficiently specific to make clear to any subsequent reviewer the weight the adjudicator gave to the treating source's

14

medical opinion and the reasons for that weight. *Id.* The ALJ is to consider certain factors, which include, (1) the length of the treatment relationship and frequency of examination, (2) the nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, and (5) the specialization of the treating source. *Id.*; *see also Wilson,* 378 F.3d at 544; 20 C.F.R. § 404.1527(c). Failure to analyze a treating source opinion under the two-prong controlling weight test amounts to a failure to provide good reasons for giving that opinion less than controlling weight. *Gayheart*, 710 F.3d at 376-77.

### 3.     Analysis

#### i.     Treating Physician Rule

The ALJ did not err in applying the treating physician rule and finding that Dr. Gastman's assessment was not well-supported by clinical or laboratory techniques and was inconsistent with other substantial evidence in the record. In declining to give Dr. Gastman's opinion controlling weight, the ALJ reasoned as follows:

> Dr. Gastman's treatment records do not indicate specific objective findings to support the reported material handling limitations or a finding of disability. Such significant limitations are directly inconsistent with the claimant's normal physical examination findings as noted within Dr. Gastman's treatment records from August 22, 2012, in which the claimant had normal musculoskeletal and neurological findings. (Exhibit 2F). Additionally,

> the restrictions are not consistent with the reported
> impairment. Severe standing and walking restrictions are
> not generally indicated for a cervical condition and the
> claimant does not have low back or leg issues. The
> opinion is also internally inconsistent. Although Dr.
> Gastman opined that the claimant is incapable of work
> due to cervical radiculopathy, he nonetheless noted that
> the claimant could use his bilateral hands and fingers for
> repetitive handling and fingering. Finally, Dr. Gastman
> reported that the claimant's conditions had existed at the
> present level for the past ten years to support his
> contention. There are no progress notes from Dr.
> Gastman from the past ten years to support this
> contention. In fact, other evidence of record, including
> the claimant's testimony[,] shows the claimant was able
> to function and even worked at substantial gainful
> activity levels despite his conditions during this time.
> (Exhibit 4D, 7E). The claimant's lack of post-operative
> treatment in combination with his noted normal physical
> exam findings suggests improvement postoperatively.

(Tr. 379).

In applying the controlling weight test, the ALJ did not err in finding that

Dr. Gastman's opinion was not well-supported by medically acceptable clinical

and laboratory diagnostic techniques. As the ALJ noted, Dr. Gastman's treatment

records did not contain specific objective findings to support a finding of disability.

(Tr. 379). Although Colombe argues that Dr. Gastman's opinion was based on

objective medical testing (ECF No. 12, PageID.727-729), this argument rings

hollow, as Dr. Gastman's opinion is silent on what evidence, if any, it relies.

Indeed, Dr. Gastman declined to write any notes under the heading "Please Set

Forth *Objective Medical Evidence* to Support Your Diagnosis and Findings . . . " in

the standardized form used to draft his opinion. (Tr. 339) (emphasis added). And, Colombe neglects to direct the court's attention to any particular objective medical evidence in the record upon which he claims Dr. Gastman relied.

There is similarly no error in the ALJ's finding that Dr. Gastman's opinion was inconsistent with other substantial evidence in the record. For example, the ALJ noted that Dr. Gastman's assessment was inconsistent with the normal musculoskeletal and neurological physical examination findings noted in Dr. Gastman's treatment records from August 22, 2012. (Tr. 379). Although the handwritten notes are difficult to decipher, the portion of the form instructing the doctor to "circle if positive" systems for which the examination revealed such findings, Dr. Gastman did not circle any items indicating issues with Colombe's head, neck, extremities, skeletal, or neurological systems. (Tr. 319). Likewise, other medical testing in the record mostly yielded normal or unremarkable results. For instance, the record indicates that Colombe's partial amputation of three fingers on his left hand has been stable since 1999 (Tr. 311), and a three-phase bone scan of Colombe's left hand in July 2012 showed no abnormalities (Tr. 322). Colombe presented for an examination in June 2013 due to pain in his right hand, which documented a diagnosis of C3-4 radiculopathy. (Tr. 342). But, the subject hand retained a full range of motion and was negative for swelling. (*Id.*) It is true that most of this evidence is outside of the relevant time period, but this fact is a

testament to the paucity of evidence in the record for the relevant time period. This shortcoming amplifies Colombe's failure to meet his burden of production by supplying sufficient evidence to support his claim.[5]  *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004) ("The claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five."). Thus, the court concludes that the ALJ did not err in finding that Dr. Gastman's assessment was not entitled to controlling weight.

ii.     Good Reasons

The ALJ assigned "very little weight" to Dr. Gastman's opinion.  The court concludes that he gave the requisite "good reasons" for this designation, including (a) the length of the treatment relationship; (b) consistency; and (c) supportability.

**Length of the Treating Relationship**.  Colombe argues that Dr. Gastman's RFC was based on his "his years of care for [the plaintiff]."  (ECF No. 12, PageID.727).  That may be so, but the years of care to which he refers appear to have occurred *after* the period under adjudication (November 15, 2011 through March 31, 2012).  (Tr. 380).  As the Commissioner points out, a retrospective

_____

[5] In a similar vein, the court declines Colombe's invitation to subpoena Dr. Boodin's records.  The court agrees with the Commissioner that such action is not warranted because the surgery pre-dated Colombe's alleged onset date by more than two years, a summary of Colombe's treatment is included in the surgical notes in the record, and the ALJ credited and accounted for Colombe's cervical impairment.  (Tr. 345-347, 373).

opinion is entitled to no deference if the treating physician had no first-hand knowledge of a plaintiff's condition prior to his date last insured. *See Clendening v. Astrue*, 2011 WL 1130448, at *5 (N.D. Ohio 2011), *aff'd* 482 Fed. Appx. 93 (6th Cir. 2012); *see also Lancaster v. Astrue*, 2009 WL 1851407, at *11 (M.D. Tenn. 2009) ("[A] retrospective diagnosis relating back to the insured period may be considered proof of disability only if it is corroborated by evidence contemporaneous with the eligible period."). Colombe's records establish that he treated with Dr. Gastman on August 22, 2012; August 28, 2012; September 11, 2012; May 29, 2013; and June 13, 2013—all post-dating March 31, 2012. (Tr. 328, 330-333, 341-342). As the ALJ points out, there is one additional treatment completed in 2012, but the month is illegible. (Tr. 334, 380). There is some evidence that Colombe may have begun treating with Dr. Gastman on July 26, 2012 (Tr. 329),[6] but Colombe has failed to provide any evidence that he treated with Dr. Gastman before that date. And, Dr. Gastman's assessment of Colombe's physical capacity is dated June 21, 2013, more than one year after his date last insured. (Tr. 54, 340).

---

[6] This date is derived from a list of active medications and medication history. (Tr. 329). Of the eleven medications listed in this record, seven were prescribed by Dr. Gastman. (*Id.*) The earliest date associated with a Dr. Gastman-prescribed medication is July 26, 2012 (the start date of this medication). (*Id.*) But, Colombe's first recorded office visit with Dr. Gastman is August 22, 2012 (Tr. 332), which suggests that Colombe began treating with Dr. Gastman in the summer of 2012.

**Consistency**.  As discussed above, Dr. Gastman's opinion is inconsistent with the objective medical evidence in a number of ways.  It also suffers from its own internal inconsistencies.  For example, although Dr. Gastman concluded that Colombe required both standing and walking limitations, the ALJ aptly observed that such limitations are not normally associated with a cervical impairment and Colombe did not have any issues with his lower back or legs.  (Tr. 379).  Thus, this limitation does not appear to match Colombe's claimed impairment.  Although Colombe argues that the ALJ "merely substitute[d] his own opinion for those of the claimant's treating physicians" (ECF No. 16, PageID.760-761), the court does not find this persuasive, because the record supports the ALJ's finding.  Specifically, Dr. Maimon testified as follows:

> There's just nothing in there that he's having any problems with his back, but he doesn't have any problems with the lower back.  He had no surgery there. He certainly doesn't have a positive straight leg raising study.

(Tr. 415).  As another example of internal inconsistency, while Dr. Gastman concluded that Colombe's cervical disk radiculopathy renders him incapable of *any* work, he himself found that Colombe could repetitively use his hands for grasping and fine manipulation.  (Tr. 338)

**Supportability**.  As discussed above, Dr. Gastman's opinion references no objective evidence.  And, the available evidence does not support Dr. Gastman's

assessment in other ways.  For example, Dr. Gastman's finding that Colombe's condition has existed since 2003 "at its present degree of severity" is unsupported by the record.  (Tr. 340).  As the ALJ noted, "[t]here are no progress notes from Dr. Gastman from the past ten years to support this contention."  (Tr. 379).  This is because, as stated above, Colombe failed to present any evidence that he treated with Dr. Gastman before July 26, 2012.  The ALJ also noted that the disability onset date suggested by Dr. Gastman (2003) contradicted Colombe's own testimony and other record evidence, which "shows the claimant was able to function and even worked at substantial gainful activity levels despite his conditions during this time."  (Tr. 379).  The ALJ's finding is borne out by evidence in the record.  First, Colombe worked through 2011 as a mechanic, as a cashier, and in lawn maintenance.  (Tr. 47-49, 147, 157).  Indeed, Colombe conceded at the second hearing that, as late as 2012, he could sort papers and perform similar manual tasks "for an hour way back then."  (Tr. 401).  Second, Colombe indicated through statements and testimony that he did a little bit of yard work, had no problems with self-care, and could prepare microwave meals—all of which require the use of his hands.  (Tr. 42, 67, 177-178).  Taken together, the available evidence not only fails to support, but also contradicts, Dr. Gastman's finding that Colombe's limitations have existed since 2003.

Dr. Maimon's testimony also shows that Dr. Gastman's assessment was not supported by the record evidence. As a preliminary matter, despite Colombe's assertion to the contrary, it does not matter that Dr. Maimon did not examine him. *See* SSR 17-2p, 2017 WL 3928306, at *3 (Mar. 27, 2017) ("To assist in evaluating this issue, adjudicators at the hearings level may ask for and consider evidence from medical experts (ME) about the individual's impairment(s), such as the nature and severity of the impairment(s)."). Dr. Maimon opined that there was insufficient evidence in the record to make a disability finding. Specifically, he testified that:

> The man's had two operative procedures. There's no comment about his postop recovery. There's no comment about any complications and there's nothing in his record that leads me to believe that this man couldn't function normally. All it is is this comment by Gasman [sic], no clinical records, no office visits, nothing.

(Tr. 419). Dr. Maimon's testimony was consistent with the record, which does, in fact, suffer from a paucity of both diagnostic and treatment records from the relevant time period. And the ALJ was within his rights to rely on Maimon's testimony. *Hill v. Comm'r of Soc. Sec.*, 560 Fed. Appx. 547, 550 (6th Cir. 2014) (holding that an ALJ may credit a non-treating physician's opinion over a treating physician's opinion when the ALJ gave good reasons for discounting the treating physician's opinion and the non-treating physician's opinion is supported by substantial evidence). Colombe's alleged financial hardship does not excuse his

lack of records.  The ALJ considered this issue and found that Colombe failed to

seek out free or low-cost care or emergency room treatment.  (Tr. 379); *see also*

*Hashemi v. Comm'r of Soc. Sec.*, 2012 WL 3759033, at *14 (E.D. Mich. Aug. 6,

2012), adopted by 2012 WL 3731754 (E.D. Mich. Aug. 29, 2012) ("And the ALJ

pointed out that there was no evidence that Plaintiff ever sought out low-cost or

free care.").  "[I]f [plaintiff] were in as much pain as he claimed, he would have

sought out intermittent or emergency treatment."  *Hashemi*, 2012 WL 3759033, at

*14.  These findings indicate that Colombe failed to meet his burden of proof.

In short, the ALJ did not err in accepting Dr. Maimon's assessment that "I

find actually nothing in this record to substantiate [Dr. Gastman's] evaluation.

Absolutely nothing."  (Tr. 419).   Moreover, he gave good reasons for assessing

little or very little weight to Dr. Gastman's opinion.  Though he did not discuss

every factor set forth in 20 C.F.R. § 404.1527(c)(1)-(6), he was not required to.

Although an ALJ must "consider" all of the factors in 20 C.F.R. § 404.1527(c) and

must "apply" the factors listed in 20 C.F.R. § 404.1527(c)(2), including its

subsections through (c)(6) to determine the weight to give that opinion, he is not

required to discuss every factor in his decision as long as he provides "good

reasons." *See* 20 C.F.R. § 404.1527(c)(2); SSR 96-2p, 1996 WL 374188, at *5

(1996); *Thacker v. Comm'r of Soc. Sec.*, 99 Fed. Appx. 661, 665 (6th Cir. 2004)

("An ALJ need not discuss every piece of evidence in the record for his decision to

stand."); *Francis v. Comm'r Soc. Sec. Admin.*, 414 Fed. Appx. 802, 804 (6th Cir. 2011) ("Although the regulations instruct an ALJ to consider these factors, they expressly require only that the ALJ's decision include 'good reasons . . . for the weight . . . give[n] [to the] treating source's opinion'—not an exhaustive factor-by-factor analysis.") (internal citation omitted).  Even a one sentence explanation for discounting a treating physician's opinion can suffice under the good reasons requirement.  *See Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 651 (6th Cir. 2009) (ALJ's one-sentence justification for discounting treating physician's opinion "reach[ed] several of the factors that an ALJ must consider" and satisfied good reasons requirement.) (internal citations omitted).  *Wohler v. Saul*, No. 1:19CV56, 2020 WL 1531296, at *4 (N.D. Ohio Mar. 31, 2020).  The ALJ's findings that Dr. Gastman's treating relationship did not appear to extend into the relevant period and that his opinion was inconsistent with substantial evidence in the record, internally inconsistent, and not supported by record evidence provide a sufficient rationale for the weight accorded to Dr. Gastman's opinion.

      D.    <u>Vocational Expert's Testimony</u>

           1.    Overview of the Parties' Arguments

Colombe also argues that substantial evidence does not support the ALJ's decision because he drew erroneous conclusions from the VE's testimony.  (ECF No. 12, PageID.730).  First, Colombe argues that he cannot perform the positions

of attendant or counter clerk, the positions the VE suggested in light of the ALJ's questioning, because these positions "require bilateral manual dexterity on a frequent basis, not the occasional basis offered by the vocational expert."[7]  (*Id.*) Next, Colombe asserts that he is unable to perform any light work due to the ALJ's finding that he could not perform past relevant work as a cashier, which is defined as light.  (*Id.* at PageID.731).

In response, the Commissioner agrees that Colombe's RFC, which included a limitation to occasional handling and fingering, precluded him from performing his past cashier job, which was light but required constant handling and fingering. (ECF No. 15, PageID.756) (citing Tr. 375, 430, DOT 2.11.462-010, 1991 WL 671841).  But, according to the Commissioner, the light jobs that the VE identified do not require frequent handling, fingering, and manual dexterity.  (*Id.*) (citing DOT 295.467-014, 1991 WL 672596 (counter and rental clerk); DOT 344.677-014, 1991 WL 672865 (usher/lobby attendant); DOT 372.667-030, 1991 WL 673099 (gate guard) (no fingering required).

---

[7] Colombe also contends that the ALJ failed to state what evidence supported the RFC. (ECF No. 12, PageID.730).  Because Colombe fails to develop this argument beyond its conclusion, the undersigned finds that he has waived this contention.  "[I]ssues adverted to in perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."  *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).  "It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones."  *Id.*

2. Legal Standard

"When a VE . . . provides evidence about the requirements of a job or occupation, the [ALJ] has an affirmative responsibility to ask about any potential conflict between that VE . . . and information provided in the DOT." SSR 00-4p, 2000 WL 1898704, at *4. If the VE's testimony "appears to conflict with the DOT," the ALJ is required to "obtain a reasonable explanation for the apparent conflict." *Id*. The ALJ's duty in this regard is "satisfied if he or she asks the VE whether his or her testimony is consistent with the DOT." *Johnson v. Comm'r of Soc. Sec.*, 535 Fed. Appx. 498, 508 (6th Cir. 2013) (citation omitted).

3. Analysis

Contrary to Colombe's assertions, there is no discrepancy between the VE's testimony and the DOT. At the second hearing, the VE identified three representative occupations for a hypothetical claimant in Colombe's position,[8] namely usher/lobby attendant (DOT 344.677-014), counter and rental clerk (DOT 295.467-014), and gate guard (DOT 372.667-030). (Tr. 381-382; 431). Each of these light jobs requires no more than occasional handling and fingering. *See* DOT 295.467-104, 1991 WL 672596 (counter and rental clerk); DOT 344.677-014, 1991 WL 672865 (usher/lobby attendant); DOT 372.667-030, 1991 WL 673099

---

[8] Notwithstanding the dearth of evidence to support a finding of limitation, the ALJ nevertheless included the limitations of, amongst other things, occasional fingering and handling. (Tr. 430-431).

(gate guard).  Further, the fact that Colombe could not perform the light job of cashier is not dispositive on this issue, because that position required "constant[]" fingering and handling, in contrast to the jobs suggested by the VE.  *See* DOT 211.462-010, 1991 WL 671841.

Even if there were discrepancies between the VE's testimony and the DOT, a fact that plaintiff has not shown here, the ALJ fully complied with SSR 00-4p when he asked the VE whether there was any discrepancy between her opinions and the DOT standards for the requirements of the jobs she named.  (Tr. 405, 432); *see also Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 603 (6th Cir. 2009) (holding that the ALJ fulfilled his duties when he asked the VE whether there was any discrepancy between his opinions and the DOT standards, even if the VE did not disclose a conflict).  As *Lindsley* makes clear, the ALJ is under no obligation to independently investigate the accuracy of the VE's testimony beyond the inquiry mandated by SSR 00-4p.  *Id.*  This obligation belongs to plaintiff's counsel, who had the opportunity to cross-examine the VE and bring out any conflicts with the DOT.  *Sims v. Comm'r of Soc. Sec.*, 2018 WL 507160, at *4 (S.D. Ohio Jan. 23, 2018) (Where the plaintiff's counsel did not notify the ALJ of any conflicts between the VE's testimony and the DOT, the ALJ fulfilled his duties by asking the VE whether he saw "any evidence that conflict[ed] with the [DOT].").

Here, plaintiff's counsel did cross-examine the VE during both the first and second hearings and made the same argument to her that he now makes before the court.  (Tr. 405).  The VE responded that the jobs she had listed require only occasional fingering and handling and expressly rejected counsel's proposition that they require constant or frequent fingering and handling.  (Tr. 406).  The fact that plaintiff's counsel did not get the answer he sought is not an appropriate ground for relief.  For this reason, the court concludes that plaintiff has waived any arguments he has regarding the vocational expert's testimony.  *See Beinlich v. Comm'r of Soc. Sec.*, 345 Fed. Appx. 163, 168-69 (6th Cir. 2009).

## IV.   ORDER

For the reasons set forth below, the court **DENIES** plaintiff's motion for summary judgment, **GRANTS** defendant's motion for summary judgment, and **AFFIRMS** the findings of the Commissioner.

Date: April 27, 2020                    s/Stephanie Dawkins Davis
                                         Stephanie Dawkins Davis
                                         United States District Judge

28